**TRADERS BANK OF KANSAS CITY, Trustee, Respondent,**

v.

**Patrick J. GOULDING, Jr., John Michael Goulding, Kimberly Goulding, an infant, By and Through her guardian ad litem, Janice Feikert, and Donna Gerlach, Appellants,**

**and**

**Shawna Ashley Goulding, By and Through her guardian ad litem, Sherrie Clevenger, and the unknown heirs, grantees, successors, children, issue or lawful issue of Patrick J. Goulding, deceased, Respondents.**

No. 67699.

Supreme Court of Missouri, En Banc.

June 17, 1986.

Steven J. Borel, Ronald E. Finley, Mary Catherine Jackson, Kansas City, for appellants.

Edward J. Houlehan, Kansas City, for respondent.

PER CURIAM.

Respondent Traders Bank of Kansas City, as trustee under a revocable inter vivos trust, brought this action to determine which of several claimants were "lawful issue" under the trust agreement and therefore proper recipients of income distributions from the trust. The trial court found in favor of claimant Shawna Ashley Goulding and against claimant Donna Gerlach. On appeal, the Court of Appeals reversed as to Shawna and affirmed as to Donna.

Both Shawna and Donna sought transfer to this Court. During the pendency of the application for transfer to this Court, Shawna Goulding and appellants Patrick J. Goulding, Jr., John Michael Goulding and Kimberly Goulding reached a settlement and filed in this Court a motion to stay proceedings and to remand the case for consideration of approval of Shawna's minor's settlement. This Court denied the applications for transfer of both Shawna

and Donna, overruled the motion, and ordered transfer on its own motion.

Subsequently, the settling parties filed, and this Court sustained, a joint motion to remand to the trial court for consideration of approval of minor's settlement. The trial court approved that settlement.

The issues presented on transfer by Shawna Ashley Goulding are now moot. This Court will consider only the issues raised by Donna Gerlach. We have jurisdiction pursuant to Mo. Const. art. V, § 10. The judgment of the trial court is affirmed.

The opinion which follows is substantially the effort of the Honorable Donald B. Clark, Chief Judge of the Missouri Court of Appeals, Western District. We quote from his work without further attribution.

Substantially all of the relevant facts are undisputed. Certain details of Goulding's relations with paramours and the identities of other family members are necessary to an understanding of the basis for the controversy.

The trust which generates the income subject to the competing claims of Goulding's issue was created in 1946 by Goulding's grandaunt, Margaret P. Galbraith. The trust was designed to provide income to Mrs. Galbraith for her lifetime and, upon her death, to continue payment of that income to seven named beneficiaries. Upon the death of the last of the named income beneficiaries, the trust terminates and the corpus is to be distributed. Because two of the named income beneficiaries were living as of the date of trial, this suit does not directly seek any directions for distribution of the trust principal.

At the time of Mrs. Galbraith's death in 1964, she was survived by six of the seven named income beneficiaries. These were a sister, Mary Goulding; a cousin, Minnie Scully; a nephew, John P. Goulding, Sr.; his wife, Isabel Goulding; and their children, John P. Goulding, Jr., and Patrick J. Goulding. According to the trust direction, income otherwise payable to Mary Goulding, Minnie Scully and John P. Goulding

during their lifetime vested upon their deaths in the lawful issue of John P. Goulding, per stirpes, assuming the survival of at least one named income beneficiary, the condition which postponed distribution of the trust corpus. As of the date of trial, Mary Goulding, Minnie Scully and John P. Goulding had all died and their income shares had passed to John P. Goulding, Jr., and Patrick J. Goulding. Before the death of the latter in an accident September 21, 1982, the event which precipitated this suit, income from the trust was being paid in the proportions of 45.75 percent to John P. Goulding, Jr., 8.5 percent to Isabel Goulding and 45.75 percent to Patrick J. Goulding. As of the date of trial, the market value of trust assets was $3,605,416.00 and net annual income was $347,403.00.

Patrick J. Goulding had been lawfully married at least five times. The children born of those marriages, Patrick, Jr., John Michael and Kimberly, three of the appellants, are prima facie entitled to share in the 45.75 percent of the trust income formerly payable to their father. Donna Gerlach was admittedly born out of wedlock but sired, as the trial court found, by Patrick J. Goulding. Thus, the dispute over allocation of the trust income is between the legitimate children of Goulding on the one side, who will receive diminished shares if other children are included, and Donna Gerlach on the other, who claims her own entitlement to participation.[1]

Donna Gerlach is the daughter of Ursel Dorrill (Gerlach). She was born March 7, 1958. The trial court found, and there is no contest made here, that she is a natural child of Patrick J. Goulding born when Goulding was age 17 and Ursel was 15. According to Donna's evidence a settlement was made on Ursel's parents by Patrick's family at the time of her birth; she had no contact with her father until she was 13 years old. Thereafter, she had intermittent visits from and with Goulding. The claim by Donna to qualification as lawful issue entitled to a share of the trust income was based on her biological ancestry and evidence that Goulding had acknowledged her to be his daughter. The trial court first found in favor of Donna's claim but later reversed the ruling when sustaining the other claimants' motions to amend the judgment. It is from this judgment that Donna appeals.

The issue presented in this case is whether Donna Gerlach is the lawful issue of her biological father, Patrick J. Goulding, Sr., within the definitive language of the trust agreement despite the acknowledged fact that she was born out of wedlock.

In the first of two points, Donna contends the trial court erred in not finding her to be within the class of lawful issue defined by the language of the trust. She urges that she is a lineal descendant by John P. Goulding, Sr., relying on *Bernheimer v. First National Bank of Kansas City*, 359 Mo. 1119, 225 S.W.2d 745 and § 474.060, RSMo Cum.Supp.1984. Her reliance is misplaced.

The *Bernheimer* decision and *Stripe v. Meffert*, 287 Mo. 366, 229 S.W. 762 (1921), which preceded it, involve the construction of §§ 474.070 and 474.080, RSMo 1978, then §§ 315 and 316, RSMo 1939. Under § 474.070, the issue of an unmarried couple are legitimate if the parents later marry and if the father recognizes the child as his own. Section 474.080 provides that the issue of a marriage deemed null in law are legitimate. *Bernheimer* holds that legitimation of issue under these sections applies only if at least one of the participants in the marriage ceremony believed that the marriage was lawful. The *Bernheimer* case has no application at all to the claim of Donna Gerlach because Ursel Dorrill and Goulding never participated in any marriage ceremony, valid or void, and there was no contention they ever did so.

---

1. Patrick J. Goulding was often heard to remark that he had sired a number of illegitimate offspring. On this account, such unnamed children were included as parties and a guardian ad litem was appointed to represent their interests.

The guardian later reported that he had not located any such persons, apart from Shawna and Donna who were already litigants represented in the case.

■ The reference by appellant to § 474.060 and the argument in her brief appear to suggest that because the trial court found Donna Gerlach to be the natural child of Patrick Goulding, *Bernheimer* mandates a decision that Gerlach is lawful issue and entitled to take a share in the trust. The contention fails because neither the statute cited nor *Bernheimer* apply.

Section 474.060 provides in subsection 2, inter alia, that a person born out of wedlock is a child of the father if paternity is established by clear and convincing proof. Assuming such proof in the present case consistent with the trial court's judgment, the result does not affect appellant's claim to the trust. Section 474.060 is applicable only to determine rights of intestate succession. This case presents no question of who may qualify as heirs of Patrick Goulding; § 474.060 is irrelevant.

*Bernheimer* supports a declaration of legitimacy upon proof of (1) paternity and (2) a marriage subsequently found void. Appellant mistakenly reads into *Bernheimer* a declaration of legitimacy following adjudication of paternity. Once it has been established that Goulding and appellant's mother never participated in a marriage ceremony, *Bernheimer* becomes factually inapposite.

Appellant also argues in her first point that the language "lawful issue" used by Mrs. Galbraith in the original and two revisions of the trust document should be construed to evidence the settlor's intent to include appellant because Mrs. Galbraith was contended to have been aware of appellant's birth before final amendment of the trust documents in 1961. Appellant cites no authority to support the argument. The authority which does exist defines "lawful issue" to include only *legitimate* children. *See Will of Hoffman,* 53 A.D.2d 55, 385 N.Y.S.2d 49, 53 (1976). ("All children are 'issue' of their parents.... But when this word relating to children is qualified by the adjective 'lawful,' it is ordinarily understood to mean those begotten and born in lawful wedlock and none others.") (*quoting Central Trust Co. v. Skillin,* 154 A.D. 227, 138 N.Y.S. 884, 886 [1912]); *In Re Sheffer's Will,* 139 Misc. 519, 249 N.Y.S. 102, 104–5 (Sur.Ct.1931) ("[I]t can scarcely be successfully controverted that 'lawful' when cojoined with 'descendants' means ... 'legitimate descendants.'"); *Brisbin v. Huntington,* 128 Iowa 166, 103 N.W. 144, 147 (1905) ("The decisions are unanimous that ... the words 'issue,' 'child' or 'children,' found in a will ... whether qualified by the word 'lawful' or not, are to be construed as only those who are legitimate....").

■ Suffice it to say that the inference from the language and legal precedent are contrary to appellant's position. The phrase "lawful issue" necessarily conveys the sense of excluding illegitimate offspring; if the settlor were in fact aware that Goulding had sired an illegitimate child, the retention of the more restrictive terminology suggests exclusion rather than inclusion.

The second point presented by appellant Gerlach asserts error by the trial court "in not applying the law non-retroactively to the current litigation." Because the point is difficult of interpretation, we undertake to address the point interpreting as best we can what is argued.

The brief includes a resume of cases bearing on unconstitutional discrimination against illegitimate children. Also mentioned is the fact that § 474.060, which did not originally provide for intestate succession of illegitimate children to interests in their father's estate, was later amended conforming to pronouncements of the United States Supreme Court. *See Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).

■ Assuming that appellant's argument is that the judgment entered against her violates rights given her under the state or federal constitutions, the issue is not available for consideration. In the responsive pleadings to the petition for declaratory judgment, appellant Gerlach made no constitutional argument supporting her claim to beneficiary status and in the trial of the case no such issue was presented. The claim of constitutional dep-

rivation, if such it be, appears for the first time on appeal.[2]

The claim comes too late and is denied. *City of St. Louis v. Missouri Commission on Human Rights,* 517 S.W.2d 65 (Mo. 1974); *State ex rel. Eagleton v. Patrick,* 370 S.W.2d 254 (Mo.1963).

The judgment of the trial court declaring that Donna Gerlach is not the lawful issue of John P. Goulding, Sr., under the terms of the Galbraith trust, and that she is not entitled to a beneficial interest under the trust, is affirmed.

**2.** Even were the argument available for our consideration, it would appear to be without merit. The interpretation and implementation of directives in a *private* trust (particularly one whose corpus consists of property not used for traditionally public purposes), through the application of neutral principles of law, does not constitute state action so as to invoke the superintendence of constitutional equal protection. *First National Bank of Kansas City v. Danforth,* 523 S.W.2d 808 (Mo.1975); *see also* Nowak, Rotunda & Young, 2 Constitutional Law 174–75 (1986).